**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. GJH 21-080-2 |
| | : | |
| CHRISTOPHER A. YOUNG, | : | |
| | : | |
| Defendant. | : | |

## CHRISTOPHER YOUNG'S MEMORANDUM IN AID OF SENTENCING

Defendant Christopher A. Young, by and through undersigned counsel, respectfully submits this memorandum in aid of sentencing, scheduled before the Honorable George J. Hazel on May 5, 2022.

### Procedural Background

On February 17, 2022, Mr. Young appeared before the Court for rearraignment. Mr. Young pleaded guilty to Conspiracy to Commit Kidnapping in violation of 18 U.S.C. § 1201(c). This offense carries a maximum possible penalty of life imprisonment, a $250,000 fine, and no more than 5 years of supervised release. There is no mandatory minimum sentence. The parties negotiated a plea pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), which, if the Court accepts it, will result in a 126-month sentence.

The United States Probation Office submitted an Expedited Presentence Investigation Report in this case. The Report calculated the applicable advisory Federal Sentencing Guidelines range. Specifically, the base offense level for this crime is 32, with a 2-level increase because a dangerous weapon was used. Mr. Young earned a 2-level decrease by accepting responsibility for his role in the offense, and an additional 1-level decrease for doing so in a timely fashion. Thus the total offense level is 31. The Report endorses the sentence proposed by the parties.

Mr. Young has a single prior conviction, for armed robbery in Washington, D.C., in 2013 when he was 18 years old. As such, his criminal history score is a 3 and the Guidelines imprisonment range is 121 to 151 months.

**The 126-Month Sentence Negotiated By The Parties And Proposed To The Court Pursuant To Rule 11(c)(1)(C), Is Consistent With The Sentencing Factors Set Forth In 18 U.S.C. § 3553(a)**

A 126-month sentence is appropriate in light of Mr. Young's background. The Pre-Sentence Report accurately recounts some aspects of Mr. Young's history, but is incomplete, especially with regard to the obstacles he has faced and, to a large extent, overcome. Mr. Young, who is now 28 years old, was raised by his mother, Ms. Lawrencine Young, in the Benning Terrace public housing project in southeast Washington, D.C. The neighborhood, known as "Simple City," has a reputation for endemic poverty, drug use, and crime, as it did when Mr. Young was a child growing up there. *See* Justin Gillis and Bill Miller, WASHINGTON POST, *In D.C.'s Simple City, Complex Rules of Life and Death*, Apr. 20, 1997, available at https://www.washingtonpost.com/wp-srv/local/daily/april/21/gangs.htm (noting, in the aftermath of the murder of a 12-year-old boy, "Nowadays, the people who live in the neighborhood are like war survivors coming out of hiding.").

Despite growing up in this fraught environment, Mr. Young persevered and reached the 11th grade at which time he was charged with an offense as a juvenile and committed to the D.C. Department of Youth Rehabilitative Services. Yet this was not the end of his education or effort at self-improvement. As an adult Mr. Young earned his GED while incarcerated in North Carolina. After he was released, Mr. Young chose to remain in North Carolina where his grandparents lived. He flourished there. He earned his HVAC certification, worked, and was able to afford his own

place to live. In 2017, Mr. Young's mother became ill and he moved back to D.C. to help care for her.

Mr. Young had a harder time finding employment in D.C. than he had in North Carolina. Nevertheless, in 2019 he successfully completed supervised release on the case that sent him to North Carolina and he avoided trouble. He eventually found a position with an HVAC company where he worked hard and frequently accepted overtime assignments. He developed a repetitive stress injury on the job, however, and was unable to continue working.

Mr. Young's life has always been centered on family. He is in a long-term relationship with Ms. Shaneka Beverly. He is a father not only to the two children he and Ms. Beverly have together (four-year-old daughter Ni'ziyh and two-year-old son Zyair), but also the three children Ms. Beverly has from a previous relationship. He is also a positive influence on his younger half-brother, Jeremiah, who plans to be a D.C. firefighter.

When Mr. Young returned to D.C., he set out to give youths in his neighborhood what he lacked when he was younger. He became active with the Alliance of Concerned Men, a non-profit organization in D.C. dedicated to violence prevention and mentoring of at-risk youth. Mr. Young mentored kids with backgrounds like his and helped them with their homework. He chaperoned field trips that were educational, such as to the Holocaust Memorial Museum, as well as others that were just fun, like to a go-kart track. He participated in back-to-school fundraisers and helped ensure that kids in the program would have school supplies. Mr. Young found his volunteer work deeply meaningful. He intends to start a similar organization as a way to give back to the community and to make amends for his misdeeds.

In February 2021, Mr. Young was still recovering from his employment-related injury. He was unable to work and unemployment payments were insufficient to cover his family's bills. It

is to his great shame and regret that when someone contacted Mr. Young with a plan to make quick money, he did not have the strength to walk away.

Mr. Young has continued to work to improve himself since he has been incarcerated. While at the Prince George's County Jail he enrolled in a 12-step  program. In that program he focused on understanding how one's upbringing affects one's choices as an adult and learning how returning citizens can make different choices. Mr. Young reached the 9th step (understanding and seeking help for mental health problems) when the rise in COVID cases due to the Omicron variant shuttered the program. He hopes it will restart soon. He has also sought substance abuse counseling.

A 126-month sentence is in line with the plea agreements reached between the government and Mr. Young's co-defendants. Mr. Young is the first of the five defendants to appear before the Court for sentencing. The plea agreements and stipulated facts, however, provide some guidance as to the relative culpability of each individual.

- Lamar Perkins has signed a plea agreement with an agreed sentence of 120 months.[1] ECF 102. According to the Statement of Facts to which Mr. Perkins agreed, he facilitated the kidnapping by acting as a lookout while Mr. Young and his brother, Darius Young, held Victim A in the apartment building basement. Mr. Perkins did not have direct contact with Victim A.

- Darius Young has signed a plea agreement with an agreed sentencing range of 144 to 162 months. ECF 125. He admitted to essentially the same conduct as his brother. He also

---

[1] Each defendant (save for Tray Sherman, who has not entered a guilty plea) has pleaded guilty to the same offense as Mr. Young: Conspiracy to Commit Kidnapping in violation of 18 U.S.C. § 1201(c). Each defendant who has pleaded guilty has asked the Court to accept a binding sentence pursuant to Rule 11(c)(1)(C). Because Mr. Young is the first to be sentenced, the Court has not yet signed off on the proposed sentences.

pleaded guilty to possession of a firearm by a prohibited person in violation of 18 U.S.C.

§ 922(g)(1) for two firearms law enforcement officers recovered from his home.

- Anthony Hebron has signed a plea agreement with an agreed sentence of 168 months. ECF

  133. According to the Statement of Facts to which Mr. Hebron agreed, he and Mr. Sherman

  conceived of and carried out the kidnapping and returned to Victim A's hotel room and

  ransacked it. Mr. Hebron also struck Victim A in the forehead with a gun.

Finally, public policy favors the Court permitting the plea agreement the parties have

reached. The parties arrived at the agreement as the result of an extensive, arm's length negotiation.

An agreement achieved in this manner allows the government and a criminal defendant represented

by zealous counsel "to allocate risk, to obtain benefits, to achieve finality and to save resources."

*United States v. Morgan*, 406 F.3d 135, 137 (2d Cir. 2005). *See also* Frank H. Easterbrook, *Plea*

*Bargaining As Compromise*, 101 Yale L.J. 1969, 1978 (1992).

**Conclusion**

Mr. Young respectfully requests that the Court impose a 126-month sentence pursuant to

Rule 11 (c)(1)(C), as agreed to by the parties. Such a sentence is within the applicable advisory

sentencing guidelines. It is a lesser sentence than the government and defense have agreed to for

more culpable defendants, and a greater sentence than the government and defense have agreed to

for a less culpable defendant. It also reflects the individual characteristics of Christopher Young

and is sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C.

§ 3553(a)(2).

Respectfully submitted,

   /s/ Adam D. Harris
Adam D. Harris, Esq.
Bar No. 20246

Law Office of Adam D. Harris, L.L.C.
600 Jefferson Plaza, Suite 201
Rockville, MD 20852
(301) 960-5005
adam@adamharrislawfirm.com

*Counsel for Defendant Christopher Young*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 21, 2022, I served a copy of the foregoing Memorandum in Aid of Sentencing on the United States via ECF.


    */s/ Adam D. Harris*
Adam D. Harris